**No. 45801.**—Protest 851594–G of Heinrich Herrmann & Weiss (New York).

BROWN, Judge:  This suit against the United States was brought at New York to recover certain duties claimed to have been illegally collected upon a shipment of pigskin cuff links.

The collector of customs at the port of New York classified the merchandise as jewelry under paragraph 1527 (A–2), Tariff Act of 1930, and assessed duty thereon at the equivalent of 110 percent ad valorem.

The importers protested, claiming the merchandise to be dutiable under paragraph 1531, Tariff Act of 1930, at 35 percent ad valorem as manufactures of leather.

The competing paragraphs read as follows:

PAR. 1527. (a) Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof):

(1) Composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum, 80 per centum ad valorem;

(2) all other, of whatever material composed, valued above 20 cents per dozen pieces, 1 cent each, and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem; *Provided*, That none of the foregoing shall be subject to a less amount of duty than would be payable if the article were not dutiable under this paragraph.

PAR. 1531. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather or parchment, and manufactures of leather, rawhide, or parchment, or of which leather, rawhide, or parchment is the component material or chief value, not specially provided for, 35 per centum ad valorem;   *   *   *

At the hearing in New York Robert Herrmann, called as a witness in behalf of the plaintiffs, testified that he was the president of the importing firm, manufacturers and importers of leather goods and novelties, and that they did not deal in jewelry at all; that he was familiar with firm's imports and the invoices covering

them. He identified the item on the present invoice reading "6 gross pairs pigskin cuff links, leather," stating that he had bought the merchandise himself, and produced samples, consisting of a pair of the links which he could not say positively were from this particular shipment but were representative of this shipment, as this merchandise had been coming in exactly the same for the last 3 or 4 years. There being no objection, the sample was admitted in evidence and marked plaintiff's collective exhibit 1.

Witness further testified that his firm merchandised items like exhibit 1 at wholesale throughout the United States, selling to department stores, in the leather goods departments and in the trunk and luggage novelty departments, also to novelty stores, but none whatever to jewelry stores or jewelry departments of department stores, in fact did not visit such stores and departments, as he did not consider the cuff links here involved to be jewelry since they were used merely to hold the cuffs together the same as any other button and served merely as an article of utility and not as an article of adornment, which last was a requisite of jewelry according to his understanding of the common meaning of the term "jewelry."

Another witness, Samuel Bamberger, called in behalf of the plaintiffs, testified that he had been in the jewelry business with two concerns for about 30 years, selling at wholesale various kinds of jewelry composed of precious and semiprecious stones and gold and silver and plated ware, but had never handled articles such as exhibit 1, which he did not consider to be jewelry as the term is used commercially in this country, and according to his experience "jewelry" means the same both commercially and commonly.

Here the plaintiff rested.

Nathan Nathanson, called as a witness on behalf of the defendant, testified that he was an examiner of merchandise at the port of New York and had served in that capacity for 10 years, and that imitation jewelry and silver were the types of merchandise which he advisorily returned for customs purposes. He further testified that he had made the advisory return in the instant case and also in the case of David P. Barry Corporation, protest 901256–G, and stated that the merchandise in the David P. Barry case and the merchandise at bar was identical in all material respects.

The record in protest 901256–G was incorporated by consent.

The witness Nathanson further testified that he had often seen articles such as those at bar in use and that they were used "for primarily decorative and incidentally utilitarian purposes." Asked by counsel for the plaintiffs whether he, counsel, had on cuff links, witness replied that he could not tell.

Just Lunning, called as a witness on behalf of the defendant, testified that he had graduated from Harvard College in 1932 and from Harvard Law School in 1937 and was at present, and for about a year, engaged as assistant to the president of the George Jensen Silver Co., that imported and sold to retail establishments in New York silver articles, silverware, tableware, jewelry, including articles of men's jewelry; that the concern imported cuff links made of silver and silver only; that ordinarily he did not do the selling at wholesale, though some at retail; that his concern considered the silver cuff links that it handled to be jewelry, but the witness was not allowed to state whether or not the leather cuff links here involved were jewelry.

On the weight of the foregoing testimony we should unhesitatingly decide that the involved leather cuff links were not jewelry as the term is used commercially or commonly.

However, the record in the incorporated case, protest 901256–G of David P. Barry Corporation, is somewhat different from the case at bar. In the Barry Corporation case the record shows that that concern was a jewelry house and

handled only jewelry for men, with the exception of one or two articles, of which the leather cuff links in question was one, which were classed as notions. The leather cuff links in question were handled with their regular jewelry line and sold to jewelry stores and the jewelry departments of department stores, and in some instances sending them out in jewelry cases. The bulk of their business in these leather cuff links was done with the luggage departments of department stores and with notion stores, to whom they offered them as notions. In the Barry case, moreover, the merchandise was more varied, as shown by the sample admitted in evidence as exhibit 1. This shows five of the samples are of different colors with various designs and somewhat glazed so as to conceal the fact that they were leather and to simulate enamel or, perhaps, some semiprecious stones. At any rate, five of the samples were more decorative and adaptive for adornment as imitation jewelry than the plain, almost unrelieved, palpably leather cuff links now before us. In fact five of the samples in the Barry case are in no way comparable to the plain leather links now before us. It seems reasonable that a line of links as shown by the Barry samples might be handled by jewelry stores and departments as imitation jewelry capable of being worn for adornment, whereas it is hard to believe that the plain leather cuff links here involved would be bought or sold for anything other than the wholly utilitarian purpose of holding the two ends of the cuffs together. They might, if exposed to view, attract attention as a novelty but hardly as an adornment. They certainly do not conform to any definition of "jewelry" that we have seen. Webster's International Dictionary, edition of 1916, and Funk and Wagnalls International Dictionary, 1939 edition, give the following definition of "jewelry":

Jewelry, taken collectively; Precious stones in mountings; Gems or ornaments prepared or sold by jewelers; Jewelers' work.

The 1939 edition of Webster's International Dictionary gives the following definition:

Jewels, taken collectively; Personal ornaments, as badges, bracelets, brooches, pendants set or studded with jewels.

The plain pigskin cuff links here involved conform to none of the above definitions, on which we must rely, as the testimony in the record as to both the common and commercial meanings is so contradictory as to be worthless, except that it was generally testified to that adornment must be one of the characteristics of jewelry.

The provision in paragraph 1527 (a) (2) "of whatever material composed" is confined to jewelry, not to adornments. Because someone might consider a raw carrot or turnip or something made therefrom as an adornment would not bring carrots and turnips or their products within the meaning of the term "jewelry".

On the record before us we find that the plain pigskin cuff links are not jewelry, whether they adorn or not, and we find that they are manufactures of leather, not specially provided for, dutiable under paragraph 1531, Tariff Act of 1930, at 35 per centum ad valorem, as claimed in the protest.

Judgment will issue accordingly.